[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 10, 2002
THOMAS K. KAHN
CLERK

_____

No.  00-11105

_____

D.C. Docket No.  97-14106-CV-EBD

JOHN ANGUS WRIGHT,

Petitioner-Appellant,

versus

SECRETARY FOR THE DEPARTMENT
OF CORRECTIONS, Michael W. Moore,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 10, 2002)**

Before EDMONDSON and CARNES, Circuit Judges, and MUSGRAVE[*], Judge.

_____

[*]Honorable R. Kenton Musgrave, Judge for the United States Court of International Trade,
sitting by designation.

CARNES, Circuit Judge:

Fifteen and a half years ago, John Angus Wright robbed a bank in Stuart, Florida. While he and his confederates in the crime were fleeing, one of them fired shots at an innocent civilian. As a result of his criminal activity on that day, Wright was later convicted in state court of two counts of armed robbery and one count of third degree felony murder, and he was sentenced to consecutive life sentences for the robberies and to five years on the attempted murder.

During the intervening years, Wright's efforts to have his conviction and sentence set aside in the courts of Florida have proved unavailing. His attempt to gain federal habeas relief has been rebuffed by the district court, and this is the appellate part of that proceeding. The case comes to us on a certificate of appealability presenting two issues: 1) whether the trial court's failure to conduct a competency hearing violated Wright's Fourteenth Amendment procedural due process rights; and 2) whether Wright's trial without a determination of his competency to stand trial violated his Sixth or Fourteenth Amendment rights. For reasons we will discuss, we answer both of those questions (after reformulating the second one) in the negative and affirm the district court's judgment.

# I. BACKGROUND

## A. THE FACTS OF THE CRIME

On August 8, 1986, John Angus Wright, George Jackson, and Lisa Morrison drove to a gun store in Stuart, Florida, where Wright and Morrison purchased a handgun. Wright himself paid for the weapon with cash. Later that day, Wright and Jackson entered a bank in the same town while Morrison waited outside in the car. Inside the bank, Wright, who was wearing a baseball cap and sunglasses, held the tellers at gunpoint with his newly acquired weapon and ordered them to give him money. He said: "Be calm, this is a robbery, give me all your money. I want hundreds and fifties." After they had collected cash from the tellers, Wright and Jackson left the bank and fled the scene in the getaway car driven by Morrison. While fleeing, one or both of the men fired shots at a truck whose driver attempted to block the parking lot exit. Law enforcement officers pursued and arrested Wright, Jackson, and Morrison that same day.

## B. OTHER FACTS RELATING TO WRIGHT'S MENTAL STATE

In 1969, a decade and a half before the crime and trial in this case, Wright had been charged with various offenses including robbery and carrying a concealed weapon. Before he could be tried on those charges, however, he was committed to South Florida State Hospital, where he was diagnosed as psychotic

3

and suffering from schizophrenia, and was found incompetent to stand trial. In May of 1970, a doctor at South Florida State Hospital concluded that Wright's schizophrenia was in remission and that he was now "sane, knows the difference between right and wrong, understands the nature of the charges and can assist counsel in his defense." The hospital recommended that Wright continue taking anti-psychotic medications.

Two other mental health experts evaluated Wright in June of 1970 and agreed that although he had been unable to distinguish between right and wrong or appreciate the consequences of his acts at the time of the offenses in September of 1969, he was at the time of their evaluations competent to stand trial. One of those experts recommended that Wright continue his medication, and both of them said that Wright should continue psychiatric treatment on a regular basis.

As a result of the experts concluding that Wright was competent to stand trial, he was tried on a charge of grand larceny but on July 1, 1970 was found not guilty by reason of insanity on that charge. After that adjudication but before the trial in this case, Wright was found guilty of robbery approximately seven different times in seven different cases. The record does not indicate whether his competency or sanity was questioned on any of those occasions.

4

Before the trial that led to the present proceeding began on January 19, 1987, defense counsel moved for appointment of a mental health expert to determine Wright's insanity at the time of the offense, and the trial court granted the motion. On January 15, 1987, defense counsel filed a notice of intent to rely upon the insanity defense. On that same day, defense counsel orally moved for the appointment of two additional experts to determine Wright's competence to stand trial and to further develop his insanity defense, but the trial court denied that motion.

Defense counsel never requested that the trial court conduct a hearing on the issue of whether Wright was mentally competent to stand trial. During the trial, defense counsel did present testimony on the issue of Wright's sanity at the time of the crime which had occurred five months before trial. Fred J. Petrilla, Jr., Ph.D., a psychologist who interviewed Wright on December 8, 1986, approximately five weeks before trial, testified that Wright was a paranoid schizophrenic, was clinically depressed, had a "great deal of psychopathy," and suffered from delusions of grandeur. He further testified that Wright's schizophrenia was chronic and recurrent, and that he had a need for treatment and continued care. Additionally, Dr. Petrilla testified that Wright, at the time of the offense, was

"actively psychotic," had no appreciation for the consequences of his action, and was unable to distinguish between right and wrong.

Dr. Petrilla also informed the court and jury of Wright's chronic drug and alcohol abuse, including his abuse of the drug LSD, since the age of twelve. He testified about Wright's family history of severe mental illness, including his mother's diagnosis of and hospitalization for schizophrenia and the psychological care his sister had received. Finally, Dr. Petrilla noted Wright's flat affect, lack of eye contact, and twitching leg during his pretrial interview five weeks before, and he remarked on Wright's continued flat affect at trial. However, Dr. Petrilla also testified that during his interview Wright had given responsive answers to questions concerning his name, address, and "different things of those lines," and that Wright had told him that he entered the bank with another man and then robbed it. Dr. Petrilla did not express an opinion about whether Wright was competent to stand trial.

The court and jury also heard testimony from Dr. Sanford Jacobson, a psychiatrist who in 1969 had diagnosed Wright with chronic and recurrent paranoid schizophrenia and had found him to be insane at the time of the events leading to his arrest and incarceration that year in Dade County, Florida. Jacobson testified to his recommendation in 1969 that Wright be committed to a state facility

6

for long-term hospitalization and treatment.  He also  testified, however, that he had not seen Wright in seventeen  years and was not able to render any opinion as to Wright's current mental health.

The trial court  admitted into evidence the 1970 report of Carl Marlowe, Jr., a psychiatrist who, after examining Wright in order  to determine his sanity and competency to stand trial in 1970,  found that Wright had a schizophrenic personality.  Marlowe's report stated that Wright had been unable to distinguish between right and wrong and to  know the nature and consequences of his acts at that time, but that he possessed "the capacity to answer charges against him, aid in his own defense and stand trial." In other words, it had been Dr. Marlowe's opinion that at the time Wright stood trial in 1970 he was mentally competent to do so.  His report had recommended Wright's continued psychiatric treatment, supervision, and medication on a regular basis.

During the trial in this case, defense counsel informed the trial court of the prior court proceedings in which Wright had been found incompetent to stand trial and not guilty by reason of insanity.  While defense counsel presented the court with several judgments, the court stated that they all appeared to be related to the same case, at least one aspect of which resulted in Wright's 1970 acquittal by reason of insanity on  grand larceny charges.  The court admitted into evidence for

the jury's consideration that judgment of acquittal by reason of insanity but not the other judgments. Although not admitted into evidence for the jury to hear, records of several of Wright's convictions occurring after he had been found not guilty by reason of insanity in 1970 were provided to the court. Those records showed that Wright had been found guilty of robbery approximately seven times in seven different cases. There is nothing before us to suggest that there was any indication in the records that the trial court saw that Wright's competency to stand trial had ever been questioned on those occasions.

In the State's rebuttal case, the court and the jury heard testimony from Lieutenant Art Jackson, supervisor of the maximum security section of the Martin County Jail. Jackson testified that from five days after Wright's arrest on August 8, 1986 until the trial began on January 19, 1987, he had escorted Wright every Wednesday night to the law library located at the courthouse, where he saw Wright advising other inmates, selecting law books for them, and discussing legal motions with them. He told how, during that same five-month period, he had seen Wright talk to guards and other inmates, watch TV, read books, and write various things, including motions. According to Jackson, Wright was "a very alert person." Jackson had heard Wright advise another inmate to fire his attorney, and had heard him speak highly of his own attorney.

Gerald Piastine, a correctional officer at the Martin County Jail, testified that he saw Wright at least two to three times per week after Wright was first incarcerated on these charges and up until the trial. He told how he had observed Wright talking and playing cards with other inmates, as well as helping them with their legal papers. Piastine also testified that Wright said he was teaching another inmate English in return for that inmate teaching him Spanish.

The jury rejected Wright's not guilty by reason of insanity defense. He was convicted on January 28, 1987 of two counts of armed robbery and one count of attempted third degree felony murder. On March 27, 1987, Wright was sentenced on those convictions to two consecutive life terms without possibility of parole for the robberies, and a term of five years for the attempted murder, to be served concurrently.

In July and August of 1987, seven and eight months after Wright's trial, two mental health experts evaluated him and concluded that he was incompetent to stand trial on another set of criminal charges pending against him in Palm Beach County, Florida. A third mental health expert, Dr. Alejandro Villalobos, evaluated him during this time period and also found that Wright "is incompetent to stand trial, either because he is psychotic or because of a deliberate attempt to appear incompetent." On October 21, 1987, the Circuit Court of the 15th Judicial Circuit

9

in Palm Beach County, Florida, accepting the opinions of those experts, deemed Wright incompetent to stand trial and involuntarily committed him for psychiatric care. After Wright had been treated, the Florida Department of Health and Rehabilitative Services determined in July of 1988 that he had been restored to competency. Once competent to proceed to trial, Wright pleaded nolo contendere to the set of charges in Palm Beach County.

### C. THE DIRECT APPEAL AND OTHER POST-CONVICTION PROCEEDINGS

Wright appealed his January 1987 conviction and sentences to the District Court of Appeal of Florida, Fourth District, arguing that: (1) the trial court erred in failing to conduct a competency hearing to determine whether his sanity had been restored by the time of trial; (2) the trial court erred in denying his motion for judgment of acquittal based upon the insanity defense; (3) the cumulative effect of the prosecutorial misconduct as related to his insanity defense required that he receive a new trial; and (4) the trial court erred in entering a written sentencing order that differed from the court's oral pronouncement.

With regard to his first claim, Wright contended that the trial court's failure to conduct a competency hearing violated Fla. R. Crim. P. 3.210, as well as Florida case law. He argued that because he previously had been found not guilty by reason of insanity, and because the prosecution had failed to present evidence

10

prior to the commencement of trial that his sanity had been restored in the interim, the trial court "had reasonable grounds to believe that [he] may not be competent to stand trial . . . and . . . erred in not holding a competency hearing." There was initially some disagreement in the present proceeding about whether Wright had argued this as a federal constitutional law claim as well as a state law violation, but the State has now conceded that Wright did raise it as a federal constitutional issue. In the appellate court, the State responded on the merits of the issue and did not assert any procedural bar.

In a two-sentence opinion, the state appellate court affirmed Wright's convictions and the sentences on the armed robbery counts, but remanded for clarification as to whether the sentence on the attempted felony murder count was to be served concurrently or consecutively. Wright v. State, 536 So. 2d 1072 (Fla. Dist. Ct. App. 1988). On remand, the trial court clarified that Wright's sentence on the attempted murder count was to be served concurrently with his life sentence on the armed robbery count.

On April 21, 1991, Wright filed a pro se motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850, claiming, among other things, that he had been tried while he was mentally incompetent. He argued that his admittedly untimely filing of his 3.850 motion, should be excused both because a mandamus

11

proceeding had intervened and because he had "virtually no memory of the crime and only a hazy recollection of being at trial."

In August of 1991, the trial court dismissed Wright's motion for post-conviction relief because it had been filed more than two years after his convictions became final. The court noted that belated motions are permissible under certain circumstances, but found that Wright had failed to allege continuous incompetency and memory loss from November 29, 1988 through April 1991. His mental competency, the court noted, was evident from the fact that Wright had himself filed four separate motions and one response during that time frame. Wright appealed the denial of his motion for post-conviction relief.

On March 18, 1992, the state appellate court issued an opinion that affirmed the denial of Wright's 3.850 motion as untimely with respect to his convictions and sentences for the armed robbery counts. The motion was held to be timely, however, as to the concurrent five-year sentence imposed for the attempted murder conviction, and the court reversed the denial of relief on that sentence and remanded for further proceedings. Wright v. State, 596 So. 2d 471 (Fla. Dist. Ct. App. 1992). On remand, the trial court again denied the motion as to the attempted felony murder sentence, and this time the appellate court affirmed the denial

without written opinion.  <u>Wright v. State</u>, 621 So. 2d 1085 (Fla. Dist. Ct. App. 1993).

In October 1991, while his appeal from the denial of his 3.850  motion was pending, Wright filed in the Fourth District Court of Appeal a <u>pro se</u> state habeas petition, alleging fourteen instances of ineffective assistance by his appellate counsel.  That  petition was denied on December 4, 1991, and the Florida Supreme Court dismissed Wright's petition for review on February 10, 1992.  Wright then filed a <u>pro se</u> petition for writ of certiorari in the United States Supreme Court, which was also denied.  On July 17, 1996, Wright, proceeding <u>pro se</u>, petitioned the Fourth District Court of Appeal for permission to apply for a writ of error coram nobis as to the attempted third degree felony murder conviction, but that court denied the application, and the Florida Supreme Court dismissed Wright's request for review of that denial.

On March 31, 1997, Wright filed a <u>pro se</u> petition for a writ of habeas corpus in federal district court, claiming, among other things, that the state trial court: (1) violated his procedural due process rights under <u>Pate v. Robinson</u>, 383 U.S. 375, 86 S. Ct. 836 (1996), by failing to conduct a competency hearing on its own initiative, and by denying defense counsel's oral motion for appointment of

13

additional mental health experts and a competency hearing; and (2) violated his substantive due process rights by trying him while he was incompetent.

In response to the petition, the State argued that it should be denied as untimely because it was filed outside the one-year grace period provided for by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (1996). The State also argued that Wright's claims were unexhausted because they had not been raised in the state court as violations of federally protected rights, and that they were also procedurally barred because any effort by Wright to exhaust the claims in state court would be denied as untimely and successive.

On July 30, 1999, the magistrate judge issued a report and recommendation concluding that Wright's habeas petition was not time-barred. The judge found that Wright's procedural due process claim was not exhausted as a federal constitutional issue, because in state court Wright had argued his claim only as a violation of state law. The magistrate judge further found that even if that claim was exhausted, Wright was still not entitled to federal habeas relief because the state court's denial of the claim on the merits was reasonable. As to Wright's substantive due process claim, the magistrate judge reasoned it was unexhausted because it had only been put forward as a violation of state law and procedure until

14

Wright raised it as a federal law claim in his Rule 3.850 motion filed on April 21, 1991. Because the state court had expressly applied a procedural bar to that claim, the magistrate judge held the substantive due process claim was procedurally barred from federal habeas corpus review. The merits of that claim is not something that was addressed in the report and recommendation.

On February 4, 2000, the district court adopted in its entirety the magistrate judge's report and denied Wright's petition for a writ of habeas corpus. The district court granted a certificate of appealability as to: (1) whether the trial court's failure to conduct a competency hearing violated Wright's Fourteenth Amendment procedural due process rights; and (2) whether Wright's trial without a determination of his competency to stand trial violated his Sixth and/or Fourteenth Amendment rights.

## II. DISCUSSION

### A. THE PROCEDURAL DUE PROCESS ISSUE INVOLVING MENTAL COMPETENCY

The first issue specified in the certificate of appealability involves a straightforward mental incompetency procedural due process claim, which was timely raised on direct appeal and rejected on the merits without discussion by the Fourth District Court of Appeal. See Wright v. State, 536 So. 2d 1072 (Fla. Dist.

15

Ct. App. 1988).[1]  Applying the deference prescribed by 28 U.S.C. § 2254(d)(1), the district court held that the state appellate court's decision on this issue was neither contrary to, nor involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

To start with, Wright says that the district court should not have given the state court's decision any deference under § 2254(d)(1), because the rejection of this claim without any discussion of it does not amount to the claim having been "adjudicated on the merits" in the state court proceedings, which is a predicate for the application of § 2254(d)(1).  We have not previously addressed this issue, although we brushed up against it in Romine v. Head, 253 F.3d 1349 (11th Cir.), reh'g and reh'g en banc denied, – F.3d – (11th Cir. Aug. 16, 2001), petition for cert. filed (U.S. Nov. 12, 2001) (No. 01-798).  In that case, it was unclear whether the federal constitutional issue had been raised and decided in state court – we expressed "grave doubt" that it had been – and the attorneys representing the State insisted that the state court had not addressed the federal issue.  Id. at 1365.  In those circumstances, we held that no deference was due the state court's

---

[1]As we have already mentioned, the State initially contended that in his direct appeal Wright had raised the failure of the trial court to conduct an inquiry into his mental competency only as a state law violation. Wright insisted he had raised the issue as a federal constitutional claim, too, and at oral argument before us the State conceded that he had.  We accept that concession.

decision of the federal constitutional issue for the simple reason that the state court probably had not decided it.  Id.  We would not defer to that which did not exist.

The circumstances in this case are different from those in Romine, because here neither side denies that the federal issue was raised in and decided by the state court, and we do not gravely doubt that it was.  Instead, the question here is whether the state court's summary, which is to say unexplicated, rejection of the federal constitutional issue qualifies as an adjudication under § 2254(d) so that it is entitled to deference.  Six circuits have squarely addressed that question, all of them concluding that the summary nature of a state court's decision does not lessen the deference that it is due.  See Sellan v. Kuhlman, 261 F.3d 303, 310-12 (2d Cir. 2001); Bell v. Jarvis, 236 F.3d 149, 158-62 (4th Cir. 2000) (en banc), cert. denied, 122 S. Ct. 74 (2001); Harris v. Stovall, 212 F.3d 940, 943 n.1  (6th Cir. 2000); Aycox v. Lytle, 196 F.3d 1174, 1177-78 (10th Cir. 1999);  James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999), cert. denied, 528 U.S. 1143, 120 S. Ct. 994 (2000); Delgado v. Lewis, 181 F.3d 1087, 1091 n.3 (9th Cir. 1999), cert. granted and

judgment vacated on other grounds, 528 U.S. 1133, 120 S. Ct. 1002 (2000).[2]  We

agree with those circuits.

We begin with the plain language of the statute itself.  See Harris v. Garner,

216 F.3d 970, 972 (11th Cir. 2000) (en banc) ("We begin our construction of [a

statutory provision] where courts should always begin the process of legislative

interpretation, and where they often should end it as well, which is with the words

of the statutory provision."), cert. denied, 121 S. Ct. 2214 (2001); United States v.

Steele, 147 F.3d 1316, 1318 (11th Cir. 1998) ("In construing a statute we must

begin, and often should end as well, with the language of the statute itself."

(quotation marks and citation omitted)).  The plain language of  § 2254(d)(1)

requires only that the federal claim have been "adjudicated on the merits in State

court proceedings" and have "resulted in a decision" that is neither contrary to nor

involves an unreasonable application of Supreme Court precedent.  That is all the

text of the provision requires.

---

[2] Our position is also supported by decisions of two other circuits, the Fifth and Seventh, that sparse or otherwise unsatisfactory state court discussion is not grounds for failing to grant deference under § 2254(d)(1).  See Neal v. Puckett, 239 F.3d 683, 696 (5th Cir.) ("[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence."), reh'g en banc granted, 264 F.3d 1149 (5th Cir. Sept. 5, 2001); Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997) ("It doesn't follow that the criterion of a reasonable determination is whether it is well reasoned.  It is not.  It is whether the determination is at least minimally consistent with the facts and circumstances of the case.").

A judicial decision and a judicial opinion are not the same thing. The chief responsibility of judges is to decide the case before them. They may, or may not, attempt to explain the decision in an opinion. The text of § 2254(d)(1) accepts this orthodox view. See Sellan, 261 F.3d at 311 ("Nothing in the phrase 'adjudicated on the merits' requires the state court to have explained its reasoning process."); Bell, 236 F.3d at 160 ("First and foremost, the language of § 2254(d) does not support such a requirement."). The statutory language focuses on the result, not on the reasoning that led to the result, and nothing in that language requires the state court adjudication that has resulted in a decision to be accompanied by an opinion that explains the state court's rationale. See Sellan, 261 F.3d at 311 ("Nowhere does the statute make reference to the state court's process of reasoning."); Aycox, 196 F.3d at 1177 ("The focus is on the state court's decision or resolution of the case." (emphasis in original)). Accordingly, all that is required is a rejection of the claim on the merits, not an explanation.

To conclude otherwise on this issue would be writing into § 2254(d)(1) an additional requirement that Congress did not put there – a requirement that the state courts explain the rationale of their decisions. Some might view such an addition as an improvement, others would not. Regardless, it would be an addition, and courts ought not add to what the legislature has said is the law. See

19

Garner, 216 F.3d at 976 (declining to add exception to statute on ground that "[w]e will not do to the statutory language what Congress did not do with it, because the role of the judicial branch is to apply statutory language, not to rewrite it."). Our function is to apply statutes, to carry out the expression of the legislative will that is embodied in them, not to "improve" statutes by altering them. See Badaracco v. Comm'r of Internal Revenue, 464 U.S. 386, 398, 104 S. Ct. 756, 764 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement.").

The plain language of § 2254(d)(1) is enough, and we could stop there, but we add another thought. Reading into the statute a requirement that state courts spell out their rationale would run counter to the main thrust of the amendments to the habeas corpus provisions that were enacted as part of the Antiterrorism and Effective Death Penalty Act (AEDPA). Those amendments, including the one that resulted in § 2254(d), plainly were intended to require greater federal court deference to state court decisions and to promote more federal-state judicial comity. Telling state courts when and how to write opinions to accompany their decisions is no way to promote comity. Requiring state courts to put forward rationales for their decisions so that federal courts can examine their thinking smacks of a "grading papers" approach that is outmoded in the post-AEDPA era.

See Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir. 1997) (rejecting the approach

to § 2254(d)(1) that would have federal habeas courts judge the quality of the state

courts' reasoning, because such an approach "would place the federal court in just

the kind of tutelary relation to the state courts that the recent amendments are

designed to end").  In § 2254(d) Congress meant to, and did, mandate deference to

state court adjudications on the merits of federal constitutional issues, and a

decision that does not rest on procedural grounds alone is an adjudication on the

merits regardless of the form in which it is expressed.[3]

We turn now to the question of whether the state court's rejection of

Wright's procedural due process claim is a decision that involves "an unreasonable

application of . . . clearly established Federal law, as determined by the Supreme

Court of the United States."  § 2254(d)(1).  The clearly established federal law on

this issue, as determined by the Supreme Court, is set out in Drope  v. Missouri,

420 U.S. 162, 95 S. Ct. 896 (1975), Pate  v. Robinson, 383 U.S. 375, 86 S. Ct. 836

(1966), and Dusky  v. United States, 362 U.S. 402, 80 S. Ct. 788 (1960).  Under

---

[3]In Neelley v. Nagle, 138 F.3d 917, 926-27 (11th Cir. 1998), we declined to give deference to a state court decision because the court's opinion explicitly misapplied the controlling Supreme Court decision.  We do not disregard Neelley, but we decline to extend that decision beyond its facts to the different circumstances of this case.  The failure of a state court to set out its reasoning is not equivalent to the conspicuous misapplication of Supreme Court precedent. We will not presume that a state court misapplied federal law, and absent indication to the contrary will assume that state courts do understand "clearly established Federal law . . . as determined by the Supreme Court of the United States," § 2254(d)(1).

21

Dusky the standard for mental competency to stand trial is "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." 362 U.S. at 402, 80 S. Ct. at 789 (internal quotation marks omitted). Under Drope and Pate the standard for determining whether a trial court violates the Due Process Clause by failing to conduct an inquiry into a defendant's competency to stand trial, where no inquiry is requested, is whether the objective facts known to the trial court at the time create a bona fide doubt as to mental competency. Drope, 420 U.S. at 180, 95 S. Ct. at 908; Pate, 383 U.S. at 385, 86 S. Ct. at 842 ("Where the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial, the [trial] judge on his own motion must impanel a jury and conduct a sanity hearing . . . .").

There is no contention that the state appellate court's rejection of the mental competency procedural due process claim in this case was contrary to the actual decisions in Drope, Pate, or Dusky; instead, the dispute centers around the unreasonable application prong of § 2254(d)(1). In determining whether the state court's decision is an unreasonable application of the law set out in those three Supreme Court decisions, we need not decide whether we would have reached the same result as the state court if we had been deciding the issue in the first instance.

22

Instead, we decide only whether the state court's decision of the issue is objectively unreasonable. See Williams v. Taylor, 529 U.S. 362, 411, 120 S. Ct. 1495, 1522 (2000) ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."); Brown v. Head, – F.3d –, No. 00-15886 (11th Cir. Nov. 15, 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

The Fourth District Court of Appeals decision rejecting Wright's procedural due process claim relating to mental incompetency is not objectively unreasonable. The facts known to the judge during the trial are that Wright suffers from schizophrenia, which had caused him to be judged mentally incompetent in 1970, which was seventeen years before the trial in this case. And he knew that Wright had been adjudicated not guilty by reason of insanity when he was tried on the charges relating to that earlier case. But the trial judge also knew that, on that distant occasion, following his treatment in a hospital Wright's mental competency had been restored. The medical experts all agreed that Wright's illness was one that went into periods of remission from time to time. The judge

23

heard that in the years between the findings and adjudication in 1970 and the trial of this case in 1987, Wright had been tried and convicted on a number of occasions without any finding (or apparent suggestion) that he was mentally incompetent.

Although Wright attempted an insanity defense at the trial of this case in January of 1987, it failed. One expert, who had examined Wright five weeks before the trial, testified that he had been actively psychotic at the time of the crime five months earlier, but the expert did not testify that Wright was not mentally competent either at the time of the evaluation, or more importantly, at the time of the trial. Instead, he testified that during the evaluation Wright had been responsive in answering questions about his name, address, and similar things, and Wright had accurately described to him the crime and Wright's role in it. There was no expert opinion or other testimony suggesting that Wright was mentally incompetent to stand trial in 1987.[4] There was plenty of unrebutted testimony indicating that, whatever may have been his condition on other occasions, Wright was mentally competent during the period immediately leading up to the trial. A

---

[4]The fact that Wright was adjudged incompetent to stand trial in connection with other charges seven and eight months after the trial of this case cannot be considered in this analysis, because it is obviously not something known to the judge in this case while this trial was being conducted. See Drope, 420 U.S. at 180, 95 S. Ct. at 908 (focusing on evidence of pretrial behavior and trial testimony); Pate, 383 U.S. at 385, 86 S. Ct. at 842 (focusing on the evidence introduced at trial).

corrections officer and an employee testified without contradiction about Wright's perfectly normal activities in jail from shortly after his arrest to the date of the trial. They told about Wright's legal research and drafting, the legal assistance and advice he provided other inmates, his normal discussions with guards and inmates, his reading and watching TV, playing cards, and plans to learn Spanish.

The state appellate court's rejection of Wright's procedural due process claim implicitly reflects a conclusion that all of the facts considered together were not sufficient to raise a bona fide doubt as to whether Wright, at the time of this trial in January of 1987, had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he [had] a rational as well as factual understanding of the proceedings against him." Dusky, 362 U.S. at 402, 80 S. Ct. at 789 (internal quotation marks omitted). Because that conclusion is not objectively unreasonable, the district court did not err in denying habeas relief to Wright on this claim.

## B. THE SUBSTANTIVE DUE PROCESS CLAIM
INVOLVING MENTAL COMPETENCY

The second issue the district court specified in the certificate of appealability is: "Whether petitioner's trial without a determination of his competency to stand trial violated his Sixth and/or Fourteenth Amendment rights." That specification

seems to include the first one, the Fourteenth Amendment procedural due process issue, which we have already discussed. To the extent that the second specification raises the issue of whether there is a Sixth Amendment right, or a Fourteenth Amendment right to a mental competency examination in addition to the procedural due process right we have already discussed, it is a non-starter for Wright. There is no Supreme Court decision that dictates the rule that trial without a determination of mental competency violates any constitutional provision other than the Fourteenth Amendment guarantee of procedural due process. Accordingly, recognition and application of such a rule in this collateral attack proceeding is barred by the non-retroactivity doctrine of Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060 (1989), and its progeny. Besides, Wright does not appear to have raised such a claim in the district court.

In any event, the parties have not treated the second issue specified in the certificate of appealability as raising the question of whether the failure of the trial court to determine if Wright was competent to stand trial violated some yet unannounced rule of constitutional law. Instead, they have argued this second specification issue to us as though it were the question of whether Wright was actually tried while mentally incompetent in violation of the substantive due process guarantees of the Fourteenth Amendment. Accordingly, we will construe

26

the COA so that the second question specified in it includes the substantive due process issue that was actually presented to the district court and which the parties have argued to us. See McCoy v. United States, 266 F.3d 1245, 1248 n.2 (11th Cir. 2001) ("Although our review is limited to the issues specified in the COA, we will construe the issue specification in light of the pleadings and other parts of the record." (internal quotation marks and citation omitted)).

Wright did claim in the district court that he had been tried while mentally incompetent in violation of his substantive due process rights. Without reaching the merits of that claim, the district court held that it was procedurally barred because it had not been raised on direct appeal. Wright concedes he failed to raise the claim on direct appeal but contends that the law of this circuit establishes that a petitioner's substantive due process claim that he was tried while mentally incompetent cannot be procedurally defaulted. The COA the district court issued did not explicitly cover this procedural default issue. Notwithstanding that, Wright urges us to conclude that when a COA has been issued as to a claim on the merits, after the district court has held that claim to be procedurally barred, we should construe the COA as including the threshold issue of procedural default as well as the merits. That makes sense to us. Unless we review a district court's threshold ruling that a claim is procedurally barred from consideration, it would be

a waste of our time to consider the merits of the claim.  See Jones v. Smith, 231 F.3d 1227, 1231 (9th Cir. 2000) ("Absent an explicit statement by the district court, in cases where a district court grants a COA with respect to the merits of a constitutional claim but the COA is silent with respect to procedural claims that must be resolved if the panel is to reach the merits, we will assume that the COA also encompasses any procedural claims that must be addressed on appeal.").  So, we will decide that procedural bar issue.

The district court's ruling that Wright had procedurally defaulted his substantive due process mental competency claim is contrary to the law of this circuit that such claims generally cannot be defaulted.  See Johnston v. Singletary, 162 F.3d 630, 637 (11th Cir. 1998);  Medina v. Singletary, 59 F.3d 1095, 1107 (11th Cir. 1995); Adams  v. Wainwright, 764 F.2d 1356, 1359 (11th Cir. 1985). Bound as we are to follow prior panel precedent, we conclude that Wright's substantive due process claim relating to mental competency is not procedurally barred, and we will address its merits.  We review it without any § 2254(d)(1) deference, because there is no state court decision on the merits of this claim.

As we have held, "'a petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence.'"  Medina, 59 F.3d at 1106

28

(quoting James v. Singletary, 957 F.2d 1562, 1571 (11th Cir. 1992)).  Only  "[a]

petitioner who presents clear and convincing evidence creating a real, substantial,

and legitimate doubt as to his competence to stand trial is entitled to a hearing on

his substantive competency claim."  Id. (internal quotation marks and citations

omitted).  The point is that on this claim, "the standard of proof is high and the

facts must positively, unequivocally, and clearly generate the legitimate doubt"

about whether the petitioner was mentally competent when he was tried.  Id.

(internal quotation marks, brackets, and citation omitted).  "Not every

manifestation of mental illness demonstrates incompetence to stand trial; rather, the

evidence must indicate a present inability to assist counsel or understand the

charges."  Id. at 1107 (internal quotation marks, brackets, and citations omitted).

Wright has not met that high standard.  The fact that he suffers from chronic

schizophrenia the effects of which have come and gone over the years is not

enough to create a real, substantial, and legitimate doubt as to whether he was

competent to stand trial in January of 1987.  His incompetency to stand trial seven

and eight months later, like his incompetency to stand trial seventeen years earlier,

is relevant, but it is not enough to counter the best evidence of what his mental

condition was at the only time that  counts, which is the time of the trial.  The best

evidence of Wright's  mental state at that time of trial is the evidence of his

29

behavior around that time, especially the evidence of how he related to and communicated with others then. The unrebutted evidence at trial is that in the days and weeks leading up to the trial Wright behaved in a perfectly normal fashion, related well to others, and had no problem at all communicating with them. There is no evidence that he behaved abnormally at trial, nor is there any evidence that he had any problem understanding the charges against him or communicating with his counsel. This claim fails on the merits.

## III. CONCLUSION

The district court's denial of habeas relief is AFFIRMED.