WILSON, Circuit Judge,
concurring:
I agree with our ultimate conclusion that Hightower has not been successful in presenting a claim under Batson. In this case, we are obliged — and perhaps constrained — to defer to the state courts. This principle, coupled with the fact that the trial court did not have before it any real evidence of Briley’s consistent pattern of discriminatory conduct,[1] supports our conclusion today.
*1042 However, I am quite concerned with the manner in which the state courts have applied Batson in this case. It appears that they have inappropriately condensed Batson’s three-part inquiry into two, thereby risking a serious constitutional error. I write separately to address my concerns, and to stress the importance of adherence to Batson’s requirements.
I first repeat the procedure that Batson mandates. First, the defendant must establish a prima facie case of discriminatory intent on the part of the prosecution. See Batson, 476 U.S. at 96, 106 S.Ct. 1712. Once a court has determined that a defendant has established a prima facie case, “the burden shifts to the State to come forward with a neutral explanation for challenging black jurors.” See id. at 97, 106 S.Ct. 1712. If the state clears this hurdle, the trial court then has the responsibility to determine whether the defendant has established purposeful discrimination. See id. at 98, 106 S.Ct. 1712; Purkett v. Elem, 514 U.S. 765, 767-68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam). An analysis of the state courts’ opinions in this case raises the question of whether they properly applied Batson’s third step.
The Georgia Supreme Court’s discussion as to the Batson issue is so brief that it is unclear whether that court even reached and resolved Batson’s third step at all. The Georgia Supreme Court’s entire discussion of Hightower’s Batson claim is as follows:
The defendant contends the prosecution was guilty of racial discrimination.... The prosecutor used only seven of his authorized 10 peremptory strikes. He used six of those seven strikes against black prospective jurors. The record shows that at least two black prospective jurors were struck by the defendant after having been accepted by the prosecutor. The prosecutor explained his peremptory challenges. Four of the challenged prospective jurors were closely related to persons convicted of serious felonies. The other two were conscientiously opposed to the death penalty, although not to the extent they were excused for cause. The trial court found that the prosecutor had articulated legitimate non-racial reasons for his challenges. Even assuming the defendant made out a prima facie case, ... the trial court’s determination is not clearly erroneous.
Hightower v. State, 259 Ga. 770, 386 S.E.2d 509, 512 (1989) (citations omitted). The language in the final two sentences quoted above seems to suggest that once a prosecutor has articulated reasons for his challenges, a court’s finding that those reasons are race-neutral is sufficient to end the Batson inquiry.[2] However, such a *1043 finding only triggers the third step in the analysis; we regard each step of Batson’s inquiry as a prerequisite to the next. Cf. Cent. Ala. Fair Hous. Ctr., Inc. v. Lowder Realty Co., 236 F.3d 629, 636 (11th Cir.2000) (“As ¡Batson’s] framework makes clear, the establishment of a prima facie case is an absolute precondition to further inquiry into the motivation behind the challenged strike.”).
Once Hightower established a prima fa-cie case of discrimination (or, once the Georgia Supreme Court assumed that Hightower established a prima facie case of discrimination), the burden shifted to the state to come forward with a neutral explanation for challenging black jurors. See Bui v. Haley, 321 F.3d 1304, 1313-14 (11th Cir.2003). Once the state cleared that hurdle, the court then had the responsibility to determine whether Hightower had established purposeful discrimination. Id. at 1314. The Georgia Supreme Court appears to have been evaluating not whether Hightower had met his burden of establishing purposeful discrimination, but merely whether the prosecution’s proffered reasons for the strikes were race-neutral. The approach taken could inappropriately turn Batson into a test of the sufficiency of the prosecution’s reasons for its strikes. An entire additional step, in which the strength of Hightower’s case was weighed against the persuasiveness of the state’s proffered reasons for the strikes, appears to be missing from this ease.
Moreover, the Georgia Supreme Court’s conclusion is questionable in that it found as not clearly erroneous a trial court finding that plainly ran contrary to Supreme Court precedent. The trial court’s primary error was in failing to find. that Hightower had established a prima facie case of discrimination. The burden on' a defendant seeking to establish a prima fa-cie case is not high; he must merely show that “ ‘he is a member of a cognizable racial group’ ” and that the “relevant circumstances raise an inference” that [the prosecution] has “exercised peremptory challenges to remove from the venire members of [his] race.” Fludd v. Dykes, 863 F.2d 822, 829 (11th Cir.1989) (quoting Batson, 476 U.S. at 96, 106 S.Ct. 1712).
Obviously, Hightower demonstrated his being a member of a cognizable racial group, and his counsel’s argument at trial, coupled with the long odds of six of seven black jurors being struck from the jury, together were sufficient to raise at least an inference of improper conduct. It is difficult to determine what else the trial court could have required of Hightower for the presentation of his prima facie case. In short, the trial court raised the standard set by the Supreme Court. See Holloway v. Horn, 355 F.3d 707, 728 (3d Cir.2004) (“The defendant generally meets [his] burden if there is a pattern of strikes or if the prosecutor’s questions and statements during voir dire support an inference of discriminatory purpose.”).'
However, our obligation to defer is great, and while it appears that the Geor *1044 gia Supreme Court could have engaged in a more thorough inquiry as to Hightower’s Batson claim, it has not affirmatively misstated federal law. Our task at this stage is to review a state court’s decision, and not its rationale. See Wright v. Sec’y for the Dep't of Corrs., 278 F.3d 1245, 1255 (11th Cir.2002). Although a state court opinion containing a “conspicuous misapplication of Supreme Court precedent” is not entitled, to deference under the AED-PA, “[w]e will not presume that a state court misapplied federal law, and absent indication to the contrary will assume that state courts do understand ‘clearly established Federal law ... as determined by the Supreme Court of the United States.’ ” Id. at 1256 n. 3 (quoting 28 U.S.C. § 2254(d)(1)). No such great deviation from federal precedent is present in this case.
Moreover, even if the Georgia Supreme Court had engaged in all three of Batson’s required steps, it is incredibly unlikely that the result in this case would have been any different. The burden of persuasion regarding purposeful discrimination never shifted from Hightower. The case he presented on this issue was not particularly strong and was met by ostensibly race-neutral reasons for the state’s strikes. We now know quite well of Briley’s shameful history of discriminatory conduct, and I question what a better defense could have exposed in this case.[3] Still, after consideration of the record, I am constrained to join in today’s decision.
A trial judge’s stewardship over the jury selection process is not to be taken lightly. As Justice Powell wrote, “[exclusion of black citizens from service as jurors constitutes a primary example of the evil the Fourteenth Amendment was designed to cure.” Batson, 476 U.S. at 85, 106 S.Ct. 1712. With this in mind, I stress the singular importance of the trial court’s role in Batson’s third step. By appearing to evaluate only the race-neutrality of the prosecution’s reasons for its strikes and not clearly making a determination as to the entire record, a court runs the risk of virtually guaranteeing victory for the prosecution in every case. Trial judges must be vigilant to ensure that Batson’s test does not become a vehicle simply for approving the sufficiency of the prosecution’s reasons for its strikes. The potential consequences of anything less are far too great.

. Our opinion notes supra "the harshness with which we criticized Briley in [Horton v. Zant, 941 F.2d 1449 (11th Cir.1991)] for his past discriminatory practices.” Supra at *1042 1035. Specifically, in Horton, we noted that Briley penned a memorandum (also mentioned in footnote 46, supra) that directed a clerk of court to limit the number of blacks, women, and young people on juries. See Horton, 941 F.2d at 1455. We also discussed in Horton a statistician's finding that in capital cases in eight Georgia counties involving black defendants over several years, Briley used 89.9% of his strikes against black venire members. See id. at 1458. In capital cases involving black defendants and white victims, that number jumped to 94.1%. See id. The case discussed a number of other similarly shocking statistical and mathematical findings. See generally id. at 1457-59. We found that under such odds, “courts cannot make a blind leap of faith that there exists some set of legitimate factors which correlates one-to-one with the race of the venire members.” See id. at 1458.

. This interpretation of the Georgia Supreme Court's opinion is buttressed by the fact that the trial court only made explicit determinations with regard to the first two steps. After hearing and approving each of the reasons for the prosecution’s strikes, the court stated "I *1043 find that the defendants have failed to establish a prima facie case of discrimination on the part of the district attorney. I further find that as to each individual strike, the State has presented an articulable, nonrace related reason for striking the prospective juror.” Tr. at 626. As I discuss infra, the trial court’s threshold finding that Hightower failed to establish a prima facie case was questionable.
Further, it is unclear what the trial court's approach to Batson actually was. After improperly failing to find that a prima facie case had been established, the trial court proceeded to Batson's second step — a step that it technically needn't have reached. Then, once it attempted to engage in Batson s full inquiry, it failed by stopping short of Batson s third step.

. I note, however, that Hightower’s Batson claim was not presented in the context of his ineffective assistance of counsel claim.