James Edward **HEATH,**
Petitioner–Appellant,

v.

Charlie **JONES, Warden;  and Don Siegelman, the Attorney General of the State of Alabama, Respondents–Appellees.**

No. 87–7756.

United States Court of Appeals,
Eleventh Circuit.

Jan. 17, 1989.

---

11. This is not a case in which the investor was inexperienced or options strategies were inappropriate.

James Edward Heath, Bessemer, Ala., pro se.

James F. Hampton, McLain & Hampton, Montgomery, Ala., Don Siegelman, Atty. Gen., Montgomery, Ala., for respondents-appellees.

Before TJOFLAT, HILL and JOHNSON, Circuit Judges.

## PER CURIAM:

The judgment of the district court denying appellant's petition for the writ of habeas corpus is affirmed on the basis of the Report and Recommendation of the Honorable Edwin L. Nelson, United States Magistrate, dated November 5, 1987 and filed November 6, 1987, adopted and approved by United States District Judge Clarence W. Allgood on December 2, 1987, a copy of the said Report and Recommendation of the Magistrate being attached hereto as appendix.

AFFIRMED.

### APPENDIX

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ALABAMA

### MIDDLE DIVISION

JAMES EDWARD HEATH, Plaintiff,

vs.

CHARLIE JONES, Warden, and THE ATTORNEY FOR THE STATE OF ALABAMA, Defendant.

CV–86–A–2179–M

### REPORT AND RECOMMENDATION

This is a petition for a writ of habeas corpus filed by a person in custody under a judgment of a court of the State of Alabama. 28 U.S.C. § 2254.

### BACKGROUND

A grand jury sitting in Talladega County, Alabama, on May 13, 1983, returned an indictment[1] by which it charged the petitioner with armed robbery in violation of *Ala. Code* § 13A–8–41 (1975).[2] Heath was

---

**1.** In pertinent part, that indictment charged as follows:

The Grand Jury of said County charge that before the finding of this Indictment James Edward Heath, alias James Heath, whose true name is to the Grand Jury unknown otherwise than as stated and subsequent to January 1, 1980, did, in the course of committing a theft of, to-wit: $550.00 in lawful currency of the United States of America, composed of at least one One–Hundred Bill and at least two Fifty–Dollar Bills, a better description of which is to the Grand Jury unknown otherwise than stated, of the aggregate value of, to-wit: $550.00, the property of Robert A. Martin, Jr., threaten the imminent use of force against the person of Robert A. Martin, Jr., with the intent to compel acquiescence to the taking or of escaping with the property, while the said James Edward Heath, alias James Heath was armed with a deadly weapon, to-wit: a shotgun, in violation of S13A–8–41(a)(1) of the *Code of Alabama,* against the peace and dignity of the State of Alabama.

**2.** Section 13A–8–41. Robbery in the first degree.

convicted after a one day trial to a jury at which he was represented by court-appointed counsel. The state gave notice that it would seek sentencing under Alabama's Habitual Felony Offender Act[3] and, on September 21, 1983, the petitioner was sentenced to life imprisonment without possibility of parole. On appeal, the Alabama Court of Criminal Appeals affirmed, apparently without writing an opinion.[4]

On October 19, 1984, the petitioner filed a petition for the writ of error coram nobis in the Circuit Court of Talladega County, Alabama. After conducting an evidentiary hearing at which the petitioner testified, the trial court denied the petition. On appeal, the Alabama Court of Criminal Appeals again affirmed.

On the present petition, which is almost illegible, Heath makes a number of claims. They are: (1) He was denied the effective assistance of counsel because (a) there was no opportunity to prepare a defense, (b) his attorney did not make appropriate objections, (c) he and his lawyer had "words" about the lawyer's lack of preparation, (d) the lawyer let the court "railroad" him, (e) he allowed the prosecutor to "have his way" with the jury, and (f) the lawyer did not reserve exceptions to adverse rulings of the trial judge; (2) he was denied equal protection because the indictment was void and did not charge him with intent to rob and because he was tried as an aider and abetter; (3) he was denied equal protection because an invalid prior conviction was used as an underlying offense for enhancement purposes; and (4) the trial court was without jurisdiction because the indictment was void for vagueness.

The respondents assert that, at least as to some of the claims, the petitioner has not exhausted state remedies by presenting his claims to the courts of the State of Alabama.

---

(a) A person commits the crime of robbery in the first degree if he violates section 13A–8–43 and he:

(1) Is armed with a deadly weapon or dangerous instrument; or

(2) Causes serious physical injury to another.

(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he is so armed.

(c) Robbery in the first degree is a Class A felony.

3. Section 13A–5–9. Habitual felony offenders—Additional penalties.

(a) In all cases when it is shown that a criminal defendant has been previously convicted of any felony and after such conviction has committed another felony, he must be punished as follows:

(1) On conviction of a Class C felony, he must be punished for a Class B felony;

(2) On conviction of a Class B felony, he must be punished for a Class A felony;

(3) On conviction of a Class A felony, he must be punished by imprisonment for life or for any term of not more than 99 years but not less than 15 years.

(b) In all cases when it is shown that a criminal defendant has been previously convicted of any two felonies and after such convictions has committed another felony, he must be punished as follows:

(1) On conviction of a Class C felony, he must be punished for a Class A felony;

(2) On conviction of a Class B felony, he must be punished by imprisonment for life or for any term of not more than 99 years but not less than 15 years;

(3) On conviction of a Class A felony, he must be punished by imprisonment for life or for any term of not less than 99 years.

(c) In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he must be punished as follows:

(1) On conviction of a Class C felony, he must be punished by imprisonment for life or for any term not more than 99 years but not less than 15 years;

(2) On conviction of a Class B felony, he must be punished for life in the penitentiary;

(3) On conviction of a Class A felony, he must be punished by imprisonment for life without parole.

4. The court has found four cases decided in the Alabama Court of Criminal Appeals which may have resulted from Heath's convictions. Since all the cases were decided without opinion and do not reference the courts from which they came, it is not possible, from the published cases, to relate any particular decision to the conviction which is the subject of this action. The four cases are: Heath v. State, 443 So.2d 67 (1983); Heath v. State, 453 So.2d 7 (1984); Heath v. State, 486 So.2d 522 (1986); Heath v. State, 492 So.2d 672 (1986).

## EXHAUSTION OF STATE REMEDIES

A state prison inmate who seeks release from custody on the ground that his conviction or sentence is in violation of the Constitution or laws of the United States must first exhaust remedies available to him in the courts of the convicting state. 28 U.S.C. § 2254(b), (c); *Walker v. Zant*, 693 F.2d 1087 (11th Cir.1983); *Bufalino v. Reno*, 613 F.2d 568 (5th Cir.1980). The requirement is a "codification of the federal judicial policy designed 'to effect a proper balance between the roles of the state and federal judicial institutions in protecting federal rights.'" *Ogle v. Estelle*, 592 F.2d 1264, 1267 (5th Cir.1979). As a matter of comity, this policy requires the federal courts to allow the states the "initial opportunity to pass upon and correct alleged violations of its prisoners' rights." *Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 848–49, 9 L.Ed.2d 837 (1963); see also *Bell v. Wainwright*, 531 F.2d 1339 (5th Cir.1976). The exhaustion requirement is deemed to have been satisfied when the federal claims have been fairly presented to the state courts. *Ogle v. Estelle*, 592 F.2d at 1267. The exhaustion requirement dictates that the precise issues presented in the federal petition must have been presented to the state courts. See *Picard v. Connor*, 404 U.S. 270, 275–78, 92 S.Ct. 509, 512–14, 30 L.Ed.2d 438 (1971); *Manning v. Alabama*, 526 F.2d 355 (5th Cir. 1976); *Alonzo v. Estelle*, 500 F.2d 672 (5th Cir.1974).

Furthermore, a state habeas petitioner must exhaust state remedies as to all his claims. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (complete exhaustion of state remedies is required); *Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir.1978).

On direct appeal, Heath's attorney's raised but one issue: whether the evidence at trial was sufficient to sustain the conviction. Additionally, counsel requested that court to consider issues presented in Heath's handwritten *pro se* brief. In his "brief" Heath argued that he should have been warned of the consequences before he was allowed to admit his identity at the sentencing hearing.

On his petition for the writ of error coram nobis, as amended, Heath claimed: (1) he was denied the effective assistance of counsel because (a) his lawyer had no chance to prepare a defense, (b) the lawyer made no objections at trial, (c) he and the lawyer had "words", (d) his attorney allowed the court to "railroad" him and the prosecutor to "have his way" with the jury; (2) there was a variance between the indictment and the proof at trial because he was charged with robbery but was tried as an aider and abetter; (3) an invalid prior conviction was used to enhance his sentence; (4) the indictment was void because of vagueness; (5) he was discriminatorily selected for application of the habitual offender act; (6) the habitual offender act violates *the ex post facto* and the bill of attainder provisions of the United States Constitution; (7) he was denied the right to appellate review; and (8) the evidence at trial was insufficient to support his conviction.

On appeal from the denial of the petition for the writ of error coram nobis, Heath's counsel argued generally that the trial court had erred in its handling of the coram nobis proceeding.

The court's comparison of the state issues with those raised here clearly indicates that the petitioner has presented substantially the same issues here which were presented in the state courts. It is true that the claims may not have been stated in precisely the same terms in all cases, but they are essentially the same. In the opinion of the magistrate, state remedies have been exhausted and the claims should be treated on the merits.

## SUMMARY JUDGMENT

Where the Rules Governing Section 2254 cases are silent the court should apply the Federal Rules of Civil Procedure. *Hill v. Linahan*, 697 F.2d 1032, 1035 (11th Cir. 1983). The court has indicated that it would treat the respondents' return as a motion for summary judgment and has provided the petitioner with an explanation of

Rule 56, Fed.R.Civ.P. In response thereto, Poole has filed a document in opposition to summary judgment in which he reiterates his claims, asserts that he was no more than an accomplice to the alleged acts, and cites numerous cases addressing issues of guilt of accomplices and sufficiency of circumstantial evidence, none of which are applicable to Poole's situation.

Summary judgment may be granted by the court whenever the materials submitted in support of and in opposition to the motion "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. Summary judgment provides a means whereby a party may go behind the pleadings by bringing to the court's attention other matters which demonstrate that there are no fact matters which require a trial. *Save Our Cemeteries, Inc. v. Archdiocese of New Orleans, Inc.,* 568 F.2d 1074 (5th Cir.), *cert. denied* 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 133 (1978). However, as the United States Court of Appeals for the Fifth Circuit [5] has said:

> Summary judgment procedure is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth. Its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer on a trial, it is to carefully test this out, in advance of trial by inquiring and determining whether such evidence exists.

*Whitaker v. Coleman,* 115 F.2d 305, 307 (5th Cir.1940).

The court is required to draw all permissible inference against the party moving for summary judgment. *Crockett v. Uniroyal,* 772 F.2d 1524, 1528–29 (11th Cir. 1985). The court's function is to determine whether there is any evidence in favor of the nonmoving party such as would authorize a jury to return a verdict in that party's favor. If the evidence does not form a sufficient basis for a verdict in favor of the non-moving party, then summary judgment should be granted. The party against whom summary judgment is sought may not sit idly by but must carry the burden of producing concrete evidence which would support a verdict in his favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, the court should proceed to consider the respondents' return as a motion for summary judgment.

## SUFFICIENCY OF THE EVIDENCE

In order to sustain a conviction for robbery in violation of § 13A–8–41 in the Alabama courts, there must be sufficient evidence from which the jury can find beyond a reasonable doubt that the defendant with felonious intent and by means of force or putting in fear of force, took and carried away the personal property of another person from the person or presence of that person. *Davis v. State,* 401 So.2d 187 (Ala. Crim.App.), *cert. denied,* 401 So.2d 190 (Ala.1981). Though it is not entirely clear, Heath apparently claims that he was improperly convicted of robbery because it was Gerald Kirksey, and not he, who actually entered the Martin Speedway Service and effected the robbery while Heath waited outside. A related claim is that he was charged with the robbery but the evidence showed that he was only an aider and abetter in the crime.

The federal courts play a limited role in weighing the constitutional sufficiency of evidence in a state criminal prosecution. *See, e.g., Martin v. State of Alabama,* 730 F.2d 721, 724 (11th Cir.1984). The sole question to be determined where a state prisoner seeks federal habeas relief on the ground that the evidence at his trial was insufficient, is whether after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the petitioner guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560,

---

**5.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*reh. denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979). When the record reflects historical facts which support conflicting inferences, there is a presumption that the jury resolved those conflicts in favor of the prosecution and against the defendant. In other words, the federal courts must defer to the judgment of the jury in assigning credibility to the witnesses and weighing the evidence. *See, Jackson, supra,* 443 U.S. at 326, 99 S.Ct. at 2792–93; *Wilcox v. Ford,* 813 F.2d 1140 (11th Cir.1987).

At Heath's trial, the State of Alabama offered testimony that on the morning of November 24, 1982, the petitioner and Gerald Kirksey went to the Martin Speedway Service, a small retail establishment owned by Robert Martin and located in Munford, Alabama. While there, they purchased a small amount of gasoline and other items and used the toilet. Four different witnesses identified the petitioner as one of the two men and described the automobile in which they were travelling. In a short while, Gerald Kirksey returned to the store wearing a ski mask over his face and, with the aid of a shotgun, robbed the establishment of approximately $550.00. At least one witness testified that she saw the automobile in which Kirksey and Heath had been travelling, then carrying two men, park on a road behind the Martin Speedway Service. She observed a man carrying a shotgun exit the vehicle and walk toward the store. Later, she saw the man return, enter the car and leave.

Most important to the state's case was the confession of James Edward Heath. An officer testified that after he had advised him of his *Miranda* [6] rights, Heath gave him a statement in which he admitted the robbery. That statement was read to the jury.

> On a Wednesday and I don't remember the exact date, I went to Gerald Kirksey's house to check on a job. Gerald was driving his blue Monte Carlo, and when we got on 202 I started driving. We went to Talladega. We took 202, Bynum, Eastoboga, and 77 into Talladega n up to Munford. We stopped at this little store. I bought $3.50 worth of gas, Snicker, and Gerald bought a pack of Kool cigarettes. We both used the bathroom. We both come out of the store and went down behind the store. Gerald said I got to have some money. I told Gerald if you going to rob something, rob something that's got something. I parked and Gerald got out and walked back down to the store with the shotgun in his hand. Gerald was in the store from three to five minutes. I seen him when he come out down behind the store, and he had the shotgun in is right hand and his left hand in the Army jacket. He run to the car and as he tried to get the gun in the back seat, it went off. I pulled off and Gerald was still trying to get in good. We headed toward Anniston and passed a church. Gerald throwed the billfold out just passed the church. Gerald also threw the green jacket out the window next to the gypsum plant. We come to my mother's house on 911 West 20th Street here in Anniston. Then Gerald counted the money in two stacks. I asked Gerald to give me the small bills and him take the big bills. We departed at my mother's house. We stopped after Gerald threw the jacket out, and I seen Gerald fold some money and put it in his breather of his car. That's all that happened cause I left him.

Trial transcript, p. 67.

On the evidence cited, it is perfectly clear that the State of Alabama established beyond a reasonable doubt that Gerald Kirksey robbed the Martin Speedway Service. Likewise, it is clear that the State established beyond a reasonable doubt that the petitioner here aided and abetted Kirksey in the commission of that robbery. Under Alabama law, one who assists another in the commission of acts which constitute crime is legally responsible for the acts of the other as though he had committed the acts himself.[7]

---

**6.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**7.** *Ala.Code* § 13A–2–23 provides:

## USE OF A PRIOR CONVICTION FOR ENHANCEMENT PURPOSES

The petitioner avers that evidence of a conviction for grand larceny which was had when he was sixteen years old should not have been admitted for sentencing purposes because he was never certified for trial as an adult. He made a similar claim on his state petition for the writ of error coram nobis. At the hearing on his state petition, Heath offered no evidence whatsoever that any of his prior conviction was unlawfully obtained.

He either waived the right to present the claim or he had no evidence to present. The magistrate concludes that he must fail on this issue here.

## VALIDITY OF THE INDICTMENT

■ The sufficiency of a state indictment is an issue on federal habeas corpus only if the indictment was so deficient that the convicting court was deprived of jurisdiction. *DeBenedictis v. Wainwright,* 674 F.2d 841 (11th Cir.1982). That is not the case presented here. An examination of the indictment, note 1 *supra,* shows that it incorporated the elements of the offense of armed robbery, named the complaining witness and sufficiently described the circumstances of the alleged robbery. The indictment was not fatally defective, for it adequately informed Heath of the charge he was called upon to defend, and the state trial court was not deprived of jurisdiction.

## INEFFECTIVE ASSISTANCE OF COUNSEL

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The court elaborated:

A person is legally accountable for the behavior of another constituting a criminal offense if, with intent to promote or assist the commission of the offense:
(1) He procures, induces or causes such other person to commit the offense; or

[F]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S.Ct. at 2064. In a companion case, *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the court said:

[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.

466 U.S. at 659, 104 S.Ct. at 2047. In order to show ineffectiveness of counsel a habeas petitioner must demonstrate that his attorney's performance fell below "an objective standard of reasonableness," 466 U.S. at 688, 104 S.Ct. at 2064 and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. at 2068. See also *Morgan v. Zant,* 743 F.2d 781 (11th Cir. 1984); *Chadwick v. Green,* 740 F.2d 897 (11th Cir.1984).

The petitioner cites a number of examples of alleged failures on the part of his trial counsel. None demonstrate that counsel failed to perform as the advocate envisioned by the Sixth Amendment to the United States Constitution. The court's examination the trial transcript and the transcript of the coram nobis hearing convinces it that Heath's trial counsel had an opportunity and did, in fact, prepare what defense was available to the petitioner.

(2) He aids or abets such other person in committing the offense; or
(3) Having a legal duty to prevent the commission of the offense, he fails to make an effort he is legally required to make.

Heath did not testify to any defense which was available and which was not presented. The trial transcript demonstrates that appropriate objections were made and exceptions preserved. There was no substantial evidence of "words" between Heath and his attorney. The claims that the attorney allowed the court to "railroad" him and the prosecutor to "have his way" with the jury are amply refuted by the record.

The claim that Heath was denied the effective assistance of counsel is without merit.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

In accord with all the above, it is recommended that the petition for the writ of habeas corpus be DENIED.

Any party who objects to this report and recommendation or anything in it must, within fifteen days of the date on which it is filed, file specific written objections with the Clerk of this Court. Failure to do so will bar any later challenge or review of the factual findings of the magistrate. See 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.1982) (*en banc*). In order to challenge the findings and recommendations of the magistrate, a party must, within fifteen days of the date the report and recommendation is filed, file with the Clerk of the Court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate. The judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate, making his own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a District Judge.

A party may not appeal a magistrate's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Clerk is DIRECTED to serve a copy of this report and recommendation on the petitioner, James Edward Heath, and upon the respondents through counsel.

DONE this 5th day of November, 1987.

/s/ Edwin L. Nelson
EDWIN L. NELSON
UNITED STATES
MAGISTRATE