[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15535
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-24624-MGC


TIMOTHY SNEED,

                                                    Petitioner-Appellant,

versus

FLORIDA DEPARTMENT OF CORRECTIONS,

                                                    Respondent-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 7, 2012)

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Timothy Sneed, a Florida state prisoner, appeals pro se from the district court's denial of his 28 U.S.C. § 2254 habeas petition. He argues that the state court erred in rejecting his claims that: (1) his amended information was invalid; (2) his speedy trial rights were violated; (3) his trial counsel was ineffective for failing to adequately object to the State's use of peremptory strikes to remove black prospective jurors and failing to preserve the issue for appeal; (4) his trial counsel was ineffective for failing to object to the exclusion of homosexuals from the venire and petit jury; (5) his trial counsel was ineffective for failing to adequately investigate juror misconduct; (6) his trial counsel was ineffective for failing to object to the State's improper closing argument; (7) his continued incarceration is illegal due to the cumulative effect of his trial counsel's errors; and (8) his appellate counsel was ineffective for failing to raise certain arguments on appeal. After careful review, we affirm.

We review the district court's denial or grant of a § 2254 habeas petition de novo. McNair v. Campbell, 416 F.3d 1291, 1297 (11th Cir. 2005). We review questions of law and mixed questions of law and fact de novo, and findings of fact for clear error. Nyland v. Moore, 216 F.3d 1264, 1266 (11th Cir. 2000). A district court's determination regarding the sufficiency of an indictment is a question of law subject to de novo review. United States v. Ndiaye, 434 F.3d 1270, 1280 (11th Cir. 2006). A claim for ineffective assistance of counsel is reviewed de novo as a mixed

2

question of law and fact.  Rhode v. Hall, 582 F.3d 1273, 1279 (11th Cir. 2009).  The pleadings of a pro se litigant must be construed liberally.  Pugh v. Smith,  465 F.3d 1295, 1300 (11th Cir. 2006).

> Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996,
>
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  So, although we review de novo the district court's decision about whether a state court reasonably applied federal law or determined the facts, we owe deference to the final state habeas judgment.  Hall v. Thomas, 611 F.3d 1259, 1284 (11th Cir. 2010).  This deference applies whenever a claim was adjudicated "on the merits."  Loggins v. Thomas, 654 F.3d 1204, 1218 (11th Cir. 2011).

For § 2254 purposes, a claim is presumed to be adjudicated on the merits if the federal claim is presented to the state court and the state court has denied relief.  Id. at 1219.  We have held that a state court's summary rejection of a claim, without

discussion, qualifies as an adjudication on the merits under § 2254(d), and, thus, warrants deference.  Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1253-54 (11th Cir. 2002).  We reasoned that the plain language of the statute only required "a rejection of the claim on the merits, not an explanation."  Id. at 1254-55. Accordingly, although the state court's March 2010 order only discussed one ground in detail, it can be considered an adjudication on the merits of the other ten grounds included in the certificate of appealability ("COA") because the order mentioned that the court had previously denied those claims.

The Supreme Court has clarified that the phrase "clearly established" in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state court decision.  Lockyer v. Andrade, 538 U.S. 63, 71 (2003).  Thus, "clearly established Federal law" means the Supreme Court's governing legal principles at the time the state court renders its decision.  Id. at 71-72.  A state court decision is "contrary to" established law: (1) if the state arrives at a conclusion opposite to that reached by the Supreme Court on a legal question; or (2) if a state court confronts facts that are "materially indistinguishable" from relevant Supreme Court precedent, but arrives at an opposite result from that arrived at by the Supreme Court.  Williams v. Taylor, 529 U.S. 362, 405-06 (2000). If no Supreme Court precedent is on point, a state court's conclusion cannot be

contrary to clearly established Federal law as determined by the U.S. Supreme Court. Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir. 2003).  A state court decision "unreasonabl[y] appli[es]" clearly established law if the state court unreasonably applies the established law to the facts of a case.  Williams, 529 U.S. at 407.

Section 2254(d) review asks only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents."  Cave v. Sec'y, Dep't of Corr., 638 F.3d 739, 744 (11th Cir.) (quotation omitted), cert. denied, 132 S. Ct. 473 (2011).  Thus, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. (quotation omitted). To overcome the deference owed to state court factual determinations, a petitioner must present clear and convincing evidence that the state court's factual findings were unreasonable.  Id. at 745; 28 U.S.C. § 2254(e)(1).

I.

First, we are unpersuaded by Sneed's claim that the state court improperly rejected his argument that his amended information was invalid (Grounds 4 and 6 of his petition).  "The sufficiency of a state indictment is an issue on federal habeas corpus only if the indictment was so deficient that the convicting court was deprived

of jurisdiction." Heath v. Jones, 863 F.2d 815, 821 (11th Cir. 1989). We have held that, "[i]f an indictment specifically refers to the statute on which the charge was based, [that] reference . . . adequately informs the defendant of the charge." United States v. Fern, 155 F.3d 1318, 1325 (11th Cir. 1998). "Moreover, the constitutional standard is fulfilled by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime." Ndiaye, 434 F.3d at 1299 (quotation omitted). The elements of second degree murder under Florida law as it existed in 1998 were: (1) unlawful killing of a human being; (2) when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life; and (3) without any premeditated design to cause death. FLA. STAT. § 782.04(2) (1998).

Here, the wording of the amended information both provided the citation to the specific statutes for the offense and used language nearly identical to the statute, which contained all the essential elements of the crime. Id. Therefore, the indictment was constitutionally adequate and sufficiently informed Sneed of the charge. Fern, 155 F.3d at 1325; Ndiaye, 434 F.3d at 1304-05. The state court's rejection of this claim was not contrary to or an unreasonable application of Supreme Court law.

## II.

6

We also find no merit to Sneed's claim that the state court improperly rejected his speedy trial argument (Ground 5). There are three sources of speedy trial rights for criminal defendants: (1) the Sixth Amendment to the U.S. Constitution; (2) the federal Speedy Trial Act; and (3) state speedy trial rules. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. In determining whether the right to a speedy trial was violated, we consider: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530 (1972). We have held that if the state pursued prosecution with reasonable diligence, then the defendant must show actual prejudice to prevail on a Sixth Amendment speedy trial claim. United States v. Harris, 376 F.3d 1282, 1290 (11th Cir. 2004).

"The first factor serves a triggering function; unless some 'presumptively prejudicial' period of delay occurred, we need not conduct the remainder of the analysis." United States v. Register, 182 F.3d 820, 827 (11th Cir. 1999). "A delay is considered presumptively prejudicial as it approaches one year" from indictment to trial. United States v. Schlei, 122 F.3d 944, 987 (11th Cir. 1997); see also Harris, 376 F.3d at 1290 (an 18-month delay is presumptively prejudicial). Different weights are assigned to different reasons for delay. Barker, 407 U.S. at 531. A deliberate

attempt to hinder the defense is weighted heavily against the State, negligence or overcrowded courts are weighted less heavily, and legitimate reasons like a missing witness justify an appropriate delay. Id. at 531, 534. Pretrial delay is often inevitable and "wholly justifiable" because the State may need time to, inter alia, collect witnesses against the accused. Doggett v. United States, 505 U.S. 647, 656 (1992).

The federal Speedy Trial Act, 18 U.S.C. §§ 3161-3174, does not apply to state court proceedings. See United States v. Bell, 833 F.2d 272, 277 (11th Cir. 1987). Instead, as a Florida prisoner, Sneed's rights were governed by Florida's speedy trial rules. See Fla.R.Crim.P. 3.191. These rules are not controlling, however, because they are not based on clearly established federal law, having been promulgated by Florida and not the U.S. Supreme Court. See 28 U.S.C. § 2254(d). Indeed, questions of state law rarely raise issues of federal constitutional significance and, therefore, "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983). A violation of Florida's speedy trial rules does not "go to the fundamental fairness of the trial" so that it is cognizable in a § 2254 petition. Davis v. Wainwright, 547 F.2d 261, 264 (5th Cir. 1977).[1]

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Here, the central question is whether the determination by the Florida court that Sneed was not deprived of the right to a speedy trial was contrary to or involved an unreasonable application of clearly established federal law.  To the extent that Sneed alleged a violation of Florida's speedy trial rules, that type of claim is not cognizable on federal habeas review because it only involves state procedural rules rather than errors of federal constitutional dimension.

To the extent that Sneed's petition, liberally construed, asserted a violation of his federal speedy trial rights, his claim still fails.  As noted above, the federal Speedy Trial Act does not apply to state courts, so Sneed has to rely on the Sixth Amendment as expressed in the Barker factors.  But even assuming arguendo that two Barker factors -- the length of the delay and prejudice -- weigh against the State, Sneed has not shown  that the remaining two factors -- when the defendant asserted his right (nearly four years after the amended information was filed) and the reason for the delay (unclear from the record) -- weigh in his favor.  As a result, Sneed has not shown that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Cave, 638 F.3d at 744 (quotation omitted).

III.

9

Nor do we agree with Sneed's claim that the state court erred in rejecting his argument that his trial counsel was ineffective for failing to adequately object to the State's use of peremptory strikes to remove black prospective jurors and failing to preserve the issue for appeal (Grounds 9 and 10). The United States Constitution provides that in "all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[se]." U.S. Const. amend. VI. To make a successful claim of ineffective assistance of counsel, a defendant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Both parts of the test must be met, thus, if a defendant cannot satisfy the performance prong, a court does not need to address the prejudice prong, and vice versa. Michael v. Crosby, 430 F.3d 1310, 1319 (11th Cir. 2005).

In determining whether counsel's performance was deficient, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. "The test for reasonableness is not whether counsel could have done something more or different; instead," the petitioner must show that counsel's performance fell outside the "wide range" of professionally competent assistance. Payne v. Allen, 539 F.3d 1297, 1317 (11th Cir. 2008) (quotation omitted). Courts

10

apply a "doubly" deferential standard in the ineffective-assistance context that takes into account § 2254's deference to state courts and the ordinary deference to counsel, affirming if "there is any reasonable argument that counsel" acted pursuant to prevailing professional standards as set forth in controlling law.  See Harrington v. Richter, 562 U.S. __, __, 131 S.Ct. 770, 788 (2011).

To establish prejudice, the petitioner has the burden to show more than that the error had "some conceivable effect on the outcome of the proceeding."  Marquard v. Sec'y for Dep't of Corr., 429 F.3d 1278, 1305 (11th Cir. 2005) (quotation omitted). "Rather, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. (quotation omitted).  When evaluating prejudice, we look at the "entire evidentiary picture."  Agan v. Singletary, 12 F.3d 1012, 1019 (11th Cir. 1994).

The Equal Protection Clause prohibits States from denying "to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Supreme Court has held that a prosecutor's use of peremptory challenges to exclude African Americans for race-related reasons from serving on a jury violates the Equal Protection Clause.  Batson v. Kentucky, 476 U.S. 79, 89 (1986).  We have interpreted Batson such that "criminal defendants and excluded jurors alike are

11

denied equal protection of the laws when the trial jury is constructed in a racially discriminatory manner." Eagle v. Linaham, 279 F.3d 926, 943 (11th Cir. 2001).

Batson requires a court to undertake a three-step analysis to evaluate equal protection challenges to a prosecutor's use of peremptory challenges. 476 U.S. at 96-98; McGahee v. Alabama Dep't of Corr., 560 F.3d 1252, 1256 (11th Cir. 2009). First, a defendant must make a prima facie showing of purposeful discrimination based upon a prohibited ground. Batson, 476 U.S. at 96-97. A prima facie case is established where a defendant shows that "he is a member of a cognizable racial group and that the relevant circumstances raise an inference that the prosecution has exercised peremptory challenges to remove from the venire members of his race." Bui v. Haley, 321 F.3d 1304, 1313 (11th Cir. 2003) (quotation and alterations omitted). Upon such a showing, the burden of proof shifts to the State to provide a race-neutral explanation for excluding the jurors. Batson, 476 U.S. at 97. Finally, in light of the parties' submissions, the trial court has the duty to determine if the defendant established purposeful discrimination. Id. at 98.

When assessing the credibility of the prosecutor's proffered reasons, the trial court may look to the prosecutor's demeanor, the reasonableness or improbability of the reasons, and whether the reason is grounded in proper trial strategy. Miller-El v. Cockrell, 537 U.S. 322, 338-39 (2003). Likewise, that the prosecutor's reasons for

12

striking a juror apply equally as well to an otherwise similar juror of a different class is evidence of purposeful discrimination. See Miller-El v. Dretke, 545 U.S. 231, 241 (2005). The implausibility of a reason may evidence pretext for discrimination. See Cockrell, 537 U.S. at 339. The ultimate burden of persuasion regarding improper motivation rests with, and never shifts from, the party challenging the peremptory strike. Purkett v. Elem, 514 U.S. 765, 768 (1995).

In this case, we cannot say that the Florida state court's judgment was contrary to, or an unreasonable application of clearly established federal law, specifically the Supreme Court's holding in Batson. As for the State's strike of the first black prospective juror, the interaction between the parties and the state court (where, upon being challenged, the State revealed that it wished to strike this juror because two prosecutors had seen her sleeping during the jury selection process, and the trial court then moved onto the next juror) was adequate under Batson, so trial counsel was not ineffective in that respect. See Hightower v. Terry, 459 F.3d 1067, 1072 n.9 (11th Cir. 2006) (recognizing that a trial judge can implicitly find a prosecutor's proffered reasons credible). Moreover, even assuming that Sneed's counsel erred by not making further efforts to preserve a Batson challenge for appeal, Sneed did not show prejudice; i.e., because his Batson claim would have been meritless, it would not have had a reasonable probability of success on appeal. Strickland, 466 U.S. at 687.

13

As for the State's strike of the second black prospective juror, the record indicates that Sneed's counsel did not object to the strike.  But even if counsel was deficient for failing to challenge the State's strike pursuant to Batson, Sneed could not establish the prejudice prong of Strickland.  Indeed, Sneed has not shown that, had counsel objected, his challenge would have been successful, nor is it clear that the second prospective black juror being on the jury would have carried a reasonable probability of changing the outcome of the trial.  Marquard, 429 F.3d at 1305.

IV.

We also find no merit in Sneed's remaining arguments on appeal, which we dispose of quickly.  As for his ineffective assistance argument based on trial counsel's failure to object to the exclusion of homosexuals from the venire and petit jury (Ground 17), Sneed has presented no evidence concerning the sexual orientation of the members of the jury pool or the petit jury, nor did he establish how many homosexuals, if any, were among the venire or petit jury.  Because he did not demonstrate that homosexuals were underrepresented, he failed to make his fair cross-section claim under the Sixth Amendment and his discriminatory jury selection claim under the Equal Protection Clause of the Fourteenth Amendment.  Duren v. Missouri, 439 U.S. 357, 364 (1979); Castaneda v. Partida, 430 U.S. 482, 494 (1977).  Moreover, the Supreme Court has never held that homosexuality is a protected class

14

for purposes of analyzing discrimination in jury selection under Batson. See United States v. Ehrmann, 421 F.3d 774, 781-82 (8th Cir. 2005). Further, since all of Sneed's jury selection claims regarding homosexuals are without merit, trial counsel was not ineffective for failing to raise them before the state habeas court. Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious objection). Accordingly, the state court's decision denying Sneed's claim in this regard was not contrary to or an unreasonable application of clearly established federal law.

As for Sneed's ineffective assistance claim based on trial counsel's failure to adequately investigate juror misconduct (Grounds 7 and 8), the state court did not clearly err by concluding that the subject of the juror notes that Sneed found in the trash can was not relevant to Sneed's trial, since nothing on the papers referred to Sneed, the trial, his race, or his sexual orientation. Because there was no juror misconduct, the state court's conclusion that trial counsel was not ineffective for failing to further investigate the notes could not have been contrary to or an unreasonable application of Supreme Court law.

Nor was the state court's rejection of his ineffective assistance claim based on trial counsel's failure to object to the State's improper closing argument (Ground 15) contrary to or an unreasonable application of Supreme Court law. As the record

15

shows, the remarks in the prosecutor's closing argument -- that Sneed and his counsel were "talking out of both sides of [their] mouth[s]," that Sneed had put on a performance on the stand, and that Sneed testified after hearing other witnesses testify -- were isolated comments that did not tend to mislead the jury. Further, competent evidence likely supported the verdict because juries at two trials convicted Sneed, and there thus was no reasonable probability that the outcome may have been different otherwise. Donnelly v. DeChristoforo, 416 U.S. 637, 642-45 (1974); Hance v. Zant, 696 F.2d 940, 950 n.7 (11th Cir. 1983), overruled on other grounds, Brooks v. Kemp, 762 F.2d 1383 (11th Cir. 1985). In addition, the Supreme Court has never found a prosecutor's closing argument so improper that it violated the defendant's due process rights, so we cannot say that the state court unreasonably applied federal law in denying Sneed's claim for relief. Reese v. Sec., Fla. Dep't of Corr., 675 F.3d 1277, 1287-88 (11th Cir. 2012).

As for Sneed's cumulative error claim (Ground 18), neither error listed in his initial brief -- the State's use of peremptory strikes and the exclusion of homosexuals from the jury venire and petit jury -- has merit, as we've already discussed. Accordingly, there are no errors to accumulate, and the state court's rejection of this claim was not contrary to or an unreasonable application of Supreme Court law. See Borden v. Allen, 646 F.3d 785, 823 (11th Cir. 2011) ("Because Borden has not

16

sufficiently pled facts that would establish prejudice -- cumulative or otherwise -- we decline to elaborate further on [a cumulative-effect ineffective assistance of counsel claim] for fear of issuing an advisory opinion on a hypothetical issue.").

Finally, the state court's rejection of Sneed's appellate-counsel-ineffectiveness claim was not contrary to or an unreasonable application of Supreme Court law. As we've already discussed, none of Sneed's challenged alleged errors, so far as they are encompassed in the COA, are meritorious; as a result, appellate counsel cannot be deemed ineffective for failing to have raised them on direct appeal. See Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990) (holding that appellate counsel is not required to raise meritless issues on appeal). Moreover, Sneed was not prejudiced by counsel's failure to raise those issues since the arguments had no reasonable probability of success. Eagle, 279 F.3d at 943.

**AFFIRMED.**