# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**v.) No. 22-683 (Kanawha County 21-F-59)**

**Joshua Marcellus Phillips,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Joshua Marcellus Phillips appeals his convictions, as set forth in the Circuit Court of Kanawha County's August 1, 2022, sentencing order, for second-degree murder and possession of a controlled substance.[1] He alleges trial and evidentiary error, as well as insufficiency of the evidence to support his second-degree murder conviction. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the petitioner's convictions is appropriate. *See* W. Va. R. App. P. 21(c).

The evidence at trial[2] revealed that on December 1, 2020, the petitioner was at a house in Charleston, Kanawha County, where he purchased clonazepam pills that he put in his pocket.[3] At the same time, Charleston Police Officer Cassie Johnson was responding to a report about a nearby, illegally parked vehicle. Officer Johnson met the petitioner beside this vehicle and began questioning him. While discussing that this vehicle, which belonged to the petitioner, was illegally parked, Officer Johnson indicated that she knew the house the petitioner had just left was a "meth house," and she asked if she could search his pockets. The petitioner denied having anything in his pockets. During this conversation, the petitioner was seated and then standing in the open door of his vehicle. On the videos, he can be seen turning and reaching into the vehicle. The officer told

---

[1] The petitioner appears by Kanawha County Deputy Chief Public Defender John Sullivan. The State of West Virginia appears by Attorney General John B. McCuskey and then-Assistant Attorney General Lara K. Bissett. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel.

[2] The evidence included witness testimony, surveillance footage from a security camera across the street, a cell phone video captured by an eyewitness, a video and audio recording taken by Officer Johnson's bodycam, and a video recording taken by the police car's dashcam.

[3] In circuit court, the pills were frequently referred to as Klonopin, which is the brand name for clonazepam.

the petitioner to stop turning away from her, to stop pulling things out of his pockets, and to stop hiding his hands from her. The officer took out her handcuffs and instructed the petitioner to put his hands behind his back. The petitioner grabbed the handcuffs and threw them out of the officer's reach. A physical altercation ensued, with both the officer and the petitioner struggling to prevent one another from pulling their respective firearms, and both yelling for the other to stop. The petitioner accused the officer of trying to shoot him, which she denied. The officer repeatedly told the petitioner to turn around and put his hands behind his back. The petitioner retrieved a concealed handgun from his waistband and fired six shots, including shooting a bullet that struck Officer Johnson in the neck. The officer also shot the petitioner. The petitioner fled the scene in his vehicle but was later found at his home, was arrested, and was transported to a hospital for treatment. Officer Johnson was taken to a hospital but died two days later from her gunshot injury.

The petitioner was indicted for one count of conspiracy to manufacture, deliver, or possess with intent to manufacture or deliver a Schedule IV controlled substance, to-wit, clonazepam; one count of the manufacture, delivery, or possession with intent to manufacture or deliver a Schedule IV controlled substance, to-wit, clonazepam; one count of first-degree murder; and one count of possession of a firearm by a prohibited person. Prior to trial, the circuit court dismissed the conspiracy and firearm counts. At his June 2022 trial, the petitioner asserted self-defense. After hearing the evidence, the jury found him guilty of the lesser included offenses of second-degree murder and simple possession of a controlled substance. In its August 1, 2022, order, the circuit court sentenced the petitioner to forty years of imprisonment for second-degree murder plus a consecutive six months of imprisonment for possession.

The petitioner asserts six assignments of error in this appeal: (1) the circuit court erred in denying his motion for a change of venue for the trial; (2) the circuit court erred in denying his challenge to the State's use of a peremptory strike that, according to the petitioner, was based on a juror's sexual orientation; (3) the circuit court erred in excluding video evidence of the petitioner's arrest; (4) the circuit court erred in denying the petitioner's motion to exclude edited video evidence; (5) the circuit court erred in denying the petitioner's instruction on imperfect self-defense; and (6) the petitioner's conviction for second-degree murder should be reversed due to insufficient evidence.

First, the petitioner contends the circuit court erred in denying his motion for a change of venue that alleged the existence of a pervasive hostile sentiment against him in Kanawha County. The motion was supported by the report of a jury consultant who reviewed media and social media reports about the altercation between the petitioner and Officer Johnson, the officer's death and funeral, and charitable endeavors performed in the community in memory of the officer. The jury consultant also reported on a telephone survey of a number of county residents. In addition, the petitioner cited to answers that some prospective jurors gave on a case-specific jury questionnaire. The circuit court held the motion in abeyance and ultimately denied the motion after the jury was selected. Although most of the prospective jurors had heard about these events, the court recognized that the question was "not . . . whether the community remembered or heard the facts of the case, but whether the jurors had such fixed opinions that they could not judge impartially the guilt or innocence of the defendant." *See* Syl. Pt. 3, in part, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994). After listening to the jurors' responses during voir dire, the court found that the seated jurors could be fair and impartial.

2

West Virginia Rule of Criminal Procedure 21(a) provides that upon a motion filed by the defendant, the circuit court "shall transfer the proceedings" to another county if the court "is satisfied that there exists in the county where the prosecution is pending so great a prejudice against the defendant that he or she cannot obtain a fair and impartial trial at the place fixed by law for holding the trial." Moreover,

> "'[t]o warrant a change of venue in a criminal case, there must be a showing of good cause therefor, the burden of which rests on the defendant, the only person who, in any such case, is entitled to a change of venue. The good cause aforesaid must exist at the time application for a change of venue is made. Whether, on the showing made, a change of venue will be ordered, rests in the sound discretion of the trial court; and its ruling thereon will not be disturbed, unless it clearly appears that the discretion aforesaid has been abused.' Point 2, Syllabus, *State v. Wooldridge*, 129 W.Va. 448, 40 S.E.2d 899 (1946)." Syllabus Point 1, *State v. Sette*, 161 W.Va. 384, 242 S.E.2d 464 (1978).

*Derr*, 192 W. Va. at 167, 451 S.E.2d at 733, Syl. Pt. 1.

After reviewing the parties' arguments and the appendix record, we find no abuse of discretion in the circuit court's denial of the motion for change of venue. The parties considered the juror questionnaires and conducted extensive jury voir dire, and the petitioner does not raise a challenge to any specific juror who was seated. While the petitioner points out that several jurors were already aware of the petitioner's case and the officer's death, he has failed to show that the pre-trial publicity resulted in the jurors' impartiality. *See id.* at 172, 451 S.E.2d at 738 (noting that change of venue was not warranted when voir dire "failed to indicate any such hostility or partiality against the defendant that could not be laid aside" (citation omitted)). Our conclusion is bolstered by the fact that the petitioner was convicted of lesser included offenses. *See DeGasperin v. Ballard*, No. 16-0133, 2017 WL 663577, at *40 (W. Va. Feb. 17, 2017) (memorandum decision) ("Further, the Court notes that Petitioner was convicted of lesser-included offenses than [sic] those charged in the indictment, and thus even in retrospect any pretrial publicity that may have occurred did not impose on Petitioner so great a prejudice as to impede the fairness of his trial.").

Second, the petitioner contends that the circuit court erred by denying a "*Batson* challenge" he made to the State's peremptory strike of one prospective juror. "We review jury selection under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), *de novo*, but we review underlying factual findings for clear error. We review the trial court's ultimate disposition for abuse of discretion." Syl. Pt. 7, *State v. Boyd*, 238 W. Va. 420, 796 S.E.2d 207 (2017). In *Batson*, the United States Supreme Court ruled that a prosecutor may not discriminate based on race when exercising peremptory challenges against prospective jurors in a criminal trial. *Batson*, 476 U.S. at 89. Similarly, in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 141-143 (1994), the Supreme Court decided that discrimination in jury selection based on gender is also prohibited. However, the petitioner does not assert race or gender discrimination; rather, he alleges that the State's peremptory strike was improperly based on the sexual orientation of this prospective juror.

As recognized by at least two federal courts of appeals, the United States Supreme Court has not addressed whether sexual orientation is a cognizable basis for a *Batson* challenge. *See U.S.*

3

*v. Ehrmann*, 421 F.3d 774, 781-82 (8th Cir. 2005); *Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, 27 (11th Cir. 2012). Nonetheless, we need not address or decide whether a peremptory challenge based on sexual orientation is unlawful. Even assuming for the sake of argument that the petitioner made a prima facie showing of discrimination, the State responded with a sufficient, neutral explanation for striking this prospective juror. *Cf.* Syl. Pt. 3, *State v. Marrs*, 180 W. Va. 693, 379 S.E.2d 497 (1989) ("The State may defeat a defendant's prima facie case of a violation of equal protection due to racial discrimination in selection of a jury by providing non-racial, credible reasons for using its peremptory challenges to strike members of the defendant's race from the jury."). The State explained that it used a peremptory strike to remove this prospective juror because it perceived him to be more liberal than other jurors based upon his choice of a radio station. The circuit court did not find this reason to be pretextual, and we conclude that the circuit court did not abuse its discretion in accepting the State's explanation. *See* Syl. Pt. 4, in part, *Parham v. Horace Mann Co.*, 200 W. Va. 609, 490 S.E.2d 696 (1997) ("[T]his Court will afford great weight to a trial court's findings as to whether a peremptory strike was used to advance" discrimination).[4]

In his third and fourth assignments of error, the petitioner challenges two of the circuit court's evidentiary rulings. "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998); *accord* Pt. 2, *State v. Harris*, 216 W. Va. 237, 605 S.E.2d 809 (2004) (recognizing that the Rules of Evidence allocate significant discretion to the trial court).

The petitioner argues that the circuit court improperly excluded from evidence videos that were recorded by police officers and by a bystander showing the petitioner being taken into custody. He argues that the videos showed officers physically mistreating him during and after his arrest, which he claims is relevant to whether the officers were biased against him in their trial testimony. The circuit court ruled that the videos were irrelevant to the shooting and granted the State's motion to exclude them.

As this Court has held, "Rule 401 of the West Virginia Rules of Evidence requires the trial court to determine the relevancy of the exhibit on the basis of whether [it] is probative as to a fact

---

[4] The State's appellate brief incorrectly argues that a *Batson* challenge requires a defendant to establish that he is a member of the same class as the challenged juror. While this formerly was the law, in 1991 the United States Supreme Court held in *Powers v. Ohio*, 499 U.S. 400, 402 (1991), that "a criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same races." We followed *Powers* when adopting Syllabus Point 4, in part, of *State ex rel. Azeez v. Mangum*, 195 W. Va. 163, 465 S.E.2d 163 (1995):

> Pursuant to the United States Supreme Court's decision in *Powers v. Ohio*, 499 U.S. 400 . . . , a defendant in a criminal trial can assert a prima facie case of racial discrimination in the use of a peremptory challenge without having to be a member of the same racial group as the prospective juror who was the subject of the state's peremptory challenge.

of consequence in the case." Syl. Pt. 7, in part, *State v. Waldron*, 218 W. Va. 450, 624 S.E.2d 887 (2005) (citation omitted). "We emphasize again that in the relevancy area a circuit court has considerable latitude in determining whether to admit or exclude evidence under Rules 401 through 403 of the Rules of Evidence." *Gentry v. Mangum*, 195 W. Va. 512, 520 n.6, 466 S.E.2d 171, 179 n.6 (1995). These videos were recorded at a separate location after the petitioner had fled the scene of the shooting, and therefore were not probative of the disputed issue in this case—whether the petitioner murdered Cassie Johnson or acted in self-defense when he, admittedly, shot her. The officers shown in the arrest videos did not witness or investigate the shooting. Moreover, there was trial testimony about the circumstances of the arrest, and the bodycam video of another officer, which also showed the arrest, *was* admitted and played for the jury. Accordingly, we find no abuse of discretion in the circuit court's decision to exclude these particular videos.

Next, the petitioner argues that the circuit court erred in admitting into evidence a merged video showing, side-by-side, separate recordings that were captured by Officer Johnson's bodycam and dashcam. This video was slowed and paused at various points, and certain parts of the videos were highlighted. The petitioner argued below, and argues in this Court, that the probative value of this evidence was outweighed by the danger of unfair prejudice and the danger of misleading the jury. He contends that selectively slowing and pausing certain moments on the video had the effect of making it appear the actions were more deliberate or more likely deliberated and premeditated.

Rule 403 of the West Virginia Rules of Evidence specifies that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse." *Derr*, 192 W. Va. at 168, 451 S.E.2d at 734, Syl. Pt. 10, in part. The circuit court determined that because the real-time videos were also admitted and played for the jury, the merged video was not unfairly prejudicial or misleading. Further, the court instructed the jury that the merged video "was made using editing techniques including slow motion, pausing and highlighting certain objects contained in the video. In considering [this video], the jury should consider the actual time period in which the events took place as you determine the facts of the case."

Upon review, we find no abuse of discretion in the circuit court's ruling. The merged video was relevant to demonstrate the sequence of events leading up to and including the shootings, and to allow the jury to assess the State's assertion of murder and the petitioner's claim of self-defense. The jury was instructed on the use of the video. Although the petitioner argues that the video could have unfairly impacted the jury's perception of whether he premeditated and deliberated the murder of Officer Johnson, the jury specifically *rejected* these elements when finding him guilty of the lesser included offense of second-degree murder.[5]

---

[5] Unlike first-degree murder, second-degree murder is defined as "the unlawful, intentional killing of another person with malice, *but without deliberation and premeditation*." Syl. Pt. 2, in part, *State v. Drakes*, 243 W. Va. 339, 844 S.E.2d 110 (2020) (emphasis added).

Fifth, although the circuit court instructed the jury on self-defense, the petitioner argues that the court erroneously refused to also give his requested instruction on "imperfect" self-defense. We review a circuit court's refusal to give a requested instruction for abuse of discretion, while the question of whether the jury was correctly instructed is reviewed de novo. Syl. Pt. 1, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996).

The petitioner relies upon authority from other jurisdictions to argue that imperfect self-defense "does not require the defendant to demonstrate that he had reasonable grounds to believe that he was in imminent danger. Rather, he must only show that he **actually believed** that he was in danger, even if that belief was unreasonable." *See Porter v. State*, 166 A.3d 1044, 1053 (Md. 2017) (citations omitted). "As a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Syl. Pt. 2, *State v. McGuire*, 200 W. Va. 823, 490 S.E.2d 912 (1997). West Virginia, however, has not recognized the doctrine of imperfect self-defense. "Having had the opportunity to consider the imperfect self-defense doctrine on multiple occasions, '[t]his Court has not recognized or adopted the doctrine of "imperfect self-defense."'" *State v. Shute*, No. 18-0969, 2020 WL 878584, at *4 (W. Va. Feb. 24, 2020) (memorandum decision) (quoting *State v. York*, No. 13-1265, 2015 WL 1881028, at *3 (W. Va. Apr. 23, 2015) (memorandum decision)). The petitioner's counsel admitted in both the circuit court, and in his brief to our Court, that there is no case from this Court requiring an imperfect self-defense instruction. Moreover, the petitioner gives us no reason to adopt the doctrine now. Accordingly, the circuit court did not err in declining to give the requested instruction.

In his sixth and final assignment of error, the petitioner argues that there was insufficient evidence presented at trial to sustain his second-degree murder conviction.[6] "[T]he relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). As this Court explained in *Guthrie*:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id.* at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part. The circuit court instructed the jury that to find the petitioner guilty of second-degree murder, it had to find beyond a reasonable doubt that he "did

---

[6] The petitioner does not challenge the sufficiency of the evidence supporting his conviction for simple possession of a controlled substance.

feloniously, unlawfully, intentionally and maliciously but without deliberation or premeditation" kill Cassie Johnson. *See* W. Va. Code § 61-2-1 (specifying degrees of murder); Syl. Pt. 2, *State v. Drakes*, 243 W. Va. 339, 844 S.E.2d 110 (2020) (defining second-degree murder).

A review of the trial record shows that the evidence overwhelmingly supports the jury's verdict of second-degree murder. The petitioner knew he had pills in his pocket that he had just illegally purchased, and when questioned by the officer, he grabbed her handcuffs and threw them out of her reach. Despite the officer repeatedly instructing him to put his hands behind his back, the petitioner struggled, pulled his handgun, and fired all six bullets toward the officer, resulting in her death. The jury heard the testimony, reviewed the video and audio recordings of the altercation, considered the physical evidence, and was able to judge who the aggressor was. Although the petitioner relies upon his own statements made during the struggle to claim he was scared and acting in self-defense when shooting the officer, the jurors heard those statements and were free to assign them whatever credibility they deemed appropriate. *See* Syl. Pt. 11, *State v. Thomas*, 249 W. Va. 181, 895 S.E.2d 36 (2023) (holding that credibility is for jury determination). Based upon the parties' arguments and the record before this Court, and considering the evidence in the light most favorable to the prosecution, the petitioner has not carried his heavy burden of challenging the sufficiency of the evidence.

For the foregoing reasons, we affirm.

Affirmed.


**ISSUED:** May 28, 2025

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn

**DISQUALIFIED:**

Justice Charles S. Trump IV

7